UNITED STATES of America,
Plaintiff,

v.

Charles PERMISOHN and Enrique
Monier, Defendants.

No. 70 Cr. 1035.

United States District Court,
S. D. New York.

March 18, 1971.

Whitney North Seymour, Jr., U. S. Atty., U. S. Dist. Court by James Schreiber, New York City, for plaintiff.

Irving Edelman, New York City, for Charles Permisohn.

Arthur Lonschein, Jamaica, N. Y., for Enrique Monier.

*Memorandum Opinion*

MOTLEY, District Judge.

Defendants, Enrique Monier and Charles Permisohn, have been indicted for a violation under the Gun Control Act of 1968, 18 U.S.C. § 922(a) (1), and for conspiring to violate the same. The provision cited makes the selling of "firearms" [1] without proper licensing, as required by 18 U.S.C. § 923, unlawful.

Defendants now move (1) to suppress any evidence [2] which was seized by Government agents from their business premises on March 3, 1970, pursuant to a warrant to search issued by the United States Commissioner; (2) to examine the grand jury minutes; and (3) to have the instant indictment dismissed on the ground that the defendants were denied a preliminary examination as provided for in Fed.R.Crim.P. 5(c).

## I. *The Motion to Suppress*

Defendants' motion to suppress the evidence seized on March 3, 1970, is made on the ground that the search warrant authorizing said seizure was issued by the Commissioner upon an insufficient showing of probable cause. Their specific contentions are two-fold. First, defendants argue that the affidavit for search [3] submitted in support of the ap-

---

1. "Firearms" is defined by 18 U.S.C. § 921(a) (3) to mean in pertinent part "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive. . . ." .

2. Pursuant to the search the Government seized from defendants 20 starter pistols and 450 rounds of .22 caliber ammunition. Three of the Mondial starter pistols had been converted to fire live ammunition when seized. (The type of starter pistol purchased by the informant was an "RTS" starter pistol.)

3. It stated as follows: that the affiant "has reason to believe that on the premises known as Charlie's Army Navy Store, 152 E. 116th Street, Manhattan . . . there is now concealed certain property, namely approximately one dozen starter guns which are being held for purposes of sale in violation of provisions of the

Gun Control Act of 1968, Title 18, U.S.C. § 921 et seq."

The facts tending to establish probable cause were contained in the following brief rider:

"Morton Jacobson, being duly sworn, deposes and says: He is a Special Investigator for the Alcohol, Tobacco and Firearms Division of the United States Treasury Department and charges and alleges as follows:

(a) He has received information from a reliable informant that on two separate occasions he purchased starter guns from two individuals known to him as Charlie and Rick doing business at Charlie's Army-Navy Store, 152 E. 116th Street, New York, New York, that Charlie and Rick told him that they had more starter guns in stock and that they could supply him with any amount he wanted; and

plication for the warrant was defective in that it did not state that the starter guns purchased by the informant [4] were, in the words of the statute "readily . . . (convertible) to expel a projectile . . ." Absent such a specification, they argue, no state of facts warranting an inference that defendants were probably engaged in criminal activity was before the Commissioner. Secondly, they assert that the facts alleged in the affidavit did not constitute a crime. It is their contention that the starter pistols specified were not in fact capable of ready conversion.

> The Supreme Court has said that probable cause is deemed to exist "where the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed." (citations omitted)

Berger v. State of New York, 388 U.S. 41, 55, 87 S.Ct. 1873, 18 L.Ed.2d 1040, 1050 (1967). With this standard to guide it, the court finds the search warrant in the instant case was valid and the evidence seized pursuant thereto need not be suppressed. The court's reasons follow.

■■ It is true, as defendants contend, that since not all starter pistols are within the purview of the statute in question the affidavit would have been much clearer had it stated in definite terms that the type of starter pistol purchased by the informant was believed to be capable of ready conversion to bullet-emitting ability. But the court does not agree with defendants that the failure to so state rendered the affidavit insufficient for two reasons. First, the court thinks it would have been clear to the Commissioner in reading the affidavit that the starter guns purchased by the informant were believed by the affiant to have been of the type for which licensing was required, i. e., capable of ready conversion. Otherwise, why would the affiant have stated that the defendants were not licensed as required by law, and on this basis have asked for a warrant to search for and seize other starter pistols believed held by defendant in violation of law? The conclusion that the gun purchased was believed to be of the type for which licensing was required and, therefore, a "firearm" within the meaning of the statute would have been inescapable. But, more importantly, the court finds that even assuming that the failure to specify the nature of the guns purchased rendered the affidavit defective, the defect would have, in any event, been cured by the contents of the complaint against these defendants which was before the Commissioner for consideration at the same time the affidavit was. The sworn complaint specifically charged that defendant, in violation of 18 U.S.C. §§ 921(a) (3) (A), 2 and 922(a) (1), sold on February 28, 1970, a starter pistol which under the statute constituted a "firearm". The sale of February 28, 1970, is the very sale to the informant mentioned in the search warrant affidavit. The affidavit, if read in conjunction with the sworn complaint is thus cured of any defects which, standing alone, it (the affidavit) might have had. The Second Circuit has, in a long string of cases, sanctioned this pragmatic approach of considering all affidavits before the Commissioner at one time in determining the sufficiency of the allegations contained in any one. United States v. Serao, 367 F.2d 347 (2d Cir. 1966), vacated on other grounds, 390 U.S. 202, 88 S.Ct. 899, 19 L.Ed.2d 1034 (1967); United States

(b) He personally has examined files maintained by the Alcohol, Tobacco and Firearms Division of the United States Treasury Department which indicate that neither Charlie and Rick nor Charlie's Army-Navy Store, 152 East 116th Street, New York, New York is licensed to engage in the business of dealing in firearms."

4. For purposes of this motion *only* defendants concede the reliability of the informant and admit that sales were made.

v. Bozza, 365 F.2d 206 (2d Cir. 1966); United States v. Markis, 352 F.2d 860 (2d Cir. 1965), vacated on other grounds, 387 U.S. 425, 87 S.Ct. 1709, 18 L.Ed.2d 864 (1967). See United States v. Averell, 296 F.Supp. 1004 (E.D.N.Y. 1969). This approach is prompted by the Supreme Court's admonition that,

"[i]f the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. . . . Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area."

United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

Defendants' first ground for suppression must, therefore, fail.

■ Defendants' argument that the guns purchased by the informant were not in fact capable of emitting projectiles goes to the merits of the case. It has never been held that proof such as would be required on trial to convict a defendant need be adduced to support a finding of probable cause. See United States v. Ventresca, *supra*, at 107–108, 85 S.Ct. 741; United States v. Campos, 255 F.Supp. 853, 856, aff'd, 362 F.2d 1011 (2d Cir.), cert. denied, 385 U.S. 842, 87 S.Ct. 95, 17 L.Ed.2d 75 (1966). With or without the deference which the Supreme Court has said should be paid by a reviewing court to a Commissioner's findings (Jones v. United States, 362 U.S. 257, 270–271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) ), the court finds the search warrant here was issued upon an adequate showing of probable cause.

II. *The Motion to Examine Grand Jury Minutes*

Defendant Permisohn argues that he should be allowed to examine the grand jury minutes because they may supply grounds for a motion to dismiss the indictment. He needs access to the minutes, he contends, in order to determine (1) the accuracy of the statements made by the Government's informant, whose identity is presently unknown to defendant; (2) what evidence was presented to the grand jury to substantiate the Government's claim of ready convertibility of starter pistols; and (3) what authority was given to show that the starter pistols were firearms. If he is denied access to the entire testimony, defendant Permisohn alternatively seeks partial access to the testimony which he, himself, rendered before the grand jury and to that of agent Jacobson, who was the affiant in support of the application to search.

■ Any consideration of an application to examine Grand Jury minutes pursuant to Rule 16 of the Fed.R.Crim. P., must begin with a recognition that mere speculation as to what such minutes might reveal is not sufficient to warrant disclosure of such material.

"[T]his Court is not required merely upon defendant's unsupported speculation to embark upon a time-consuming pretrial excursion for the purpose of determining whether the Grand Jury had sufficient evidence before it to find probable cause to file the indictment. An indictment returned by a legally constituted grand jury is sufficient to call for trial on the merits." United States v. Crisona, 271 F.Supp. 150, 159 (D.C. 1967), aff'd, 416 F.2d 107 (2d Cir. 1969).

■ Defendant's three grounds in support of his motion demonstrate no "compelling showing of circumstances" or "particularized need" which would warrant this court in granting the motion. Dennis v. United States, 384 U.S. 855, 870, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); United States v. Procter & Gamble, 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). Defendant's rights in this regard will be adequately protected on trial should the need for

disclosure present itself.[5] See United States v. McCarthy, 292 F.Supp. 937, 942–43 (S.D.N.Y.1968). The motion is, therefore, denied.

### III. *The Motion to Dismiss*

Defendant Permisohn seeks dismissal of the instant indictment on the ground that he has been prejudiced by the failure of the Government to afford him a preliminary hearing within a reasonable period of time. In particular defendant claims he was prejudiced by the failure to hold a preliminary hearing because he had no opportunity to question any witnesses the Government might have had, or to produce witnesses on his own behalf. Moreover, he claims that the delay violated his right to a speedy trial.

Defendants were arrested on March 13, 1970, and bail was set. Subsequent to that date, and stretching over a period of time up to November 18, 1970, at least 6–8 dates for a preliminary hearing were agreed upon. No hearing was ever held, however, because adjournments were granted at most of the appearances at the Government's behest. At least once in September, 1970, an adjournment was secured at the specific behest of defense counsel. Finally, on November 18, 1970, the Commissioner dismissed the complaint, discharged the defendants, and returned the bail for failure to hold a preliminary hearing. On December 14, 1970, the instant indictment was filed.

■ The motion to dismiss the indictment is denied for the reason that there has been no showing that the adjournments and resultant delay either prejudiced defendant or denied him any constitutional rights. Defendant was at liberty during the interim in question, was represented by counsel who did not strenuously seek a preliminary hearing, was discharged from custody by the Commissioner for delay, and bail was returned to him. This is not a case where the Government obtained statements or evidence hostile to defendant's interest after defendant's arrest and in an overly long interim prior to a preliminary hearing, which, if held expeditiously, might have resulted in an early discharge of defendant. See United States v. Cowan, 37 F.R.D. 215, 218 (S.D.N.Y. 1965), aff'd, 396 F.2d 83 (2d Cir. 1968). Defendant's claim of need but inability to cross examine witnesses on his behalf would be more meritorious were that the case. Here, however, the evidence to be used against defendant was in the possession of the Government prior to defendant's arrest. After the arrest, and prior to indictment, no new charges were placed against him. In this context, therefore, any claim of prejudice due to inability to cross examine Government witnesses at a preliminary hearing and thereby to be more adequately prepared for trial is without merit.

■ Moreover, the purpose of a preliminary hearing, as provided for in Fed.R.Crim.P. 5(c), is not to provide a defendant with a preview of the Government's case against him but rather to "afford a person arrested upon complaint an opportunity to challenge the existence of probable cause for detaining him or requiring bail." United States v. Cowan, 396 F.2d 83 (2d Cir. 1968). Once an indictment is filed in a case, the need for a preliminary hearing is obviated, the returning of an indictment, itself, constituting an independent finding of probable cause by the grand jury. United States v. Heap, 345 F.2d 170 (2d Cir. 1967); United States v. Gilchrist, 347 F.2d 715 (2d Cir. 1965); United States v. Robinson, 42 F.R.D. 421 (S.D. N.Y.1967). Defendant's argument speculating as to how much useful information might have been "discovered" had there been a preliminary hearing, is thus beside the point since "discovery" is not the purpose for which a preliminary hearing is authorized.

■ As to defendant's claim that the delay denied him his Sixth Amendment

---

5. If any of the witnesses who appeared before the grand jury are called on the trial, defendants will be able to examine the minutes of that witness' testimony before the grand jury for cross examination purposes. 18 U.S.C. § 3500, as amended, Pub.L.No. 91–452 § 3334, 102(d) (Oct. 15, 1970).

right to a speedy trial, this is unmeritorious.[6] He has shown neither that the delay was unduly long, or that the reasons for it were not legitimate. No showing of prejudice in terms of unavailability of witnesses, or fading memory, for example, has been made. See United States v. Alo, 439 F.2d 751 (2d Cir., filed February 19, 1971) and the discussion of the prejudice requirement therein. And, finally, defendant has not demonstrated that he ever "demanded" a speedy trial as required by United States v. Lustman, 258 F.2d 475 (2d Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958). See United States v. Smalls, 438 F.2d 711 (2d Cir. 1971), and the cases cited therein; Maxwell v. United States, 439 F.2d 135 (2d Cir. 1971).

The motions are denied.

So ordered.

---

6. Four factors must be examined in order to determine whether there has been a violation of the right to a speedy trial: "(1) the length of the delay; (2) the reason for the delay; (3) the prejudice to the defendant; and (4) waiver by the defendant." United States ex rel. Solomon v. Mancusi, 412 F.2d 88, 90 (2d Cir.), cert. denied, 396 U.S. 936, 90 S.Ct. 269, 24 L.Ed.2d 236 (1969); see also United States ex rel. Von Cseh v. Fay, 313 F. 2d 620, 623–24 (2d Cir. 1963); United States v. Rosenstein, 434 F.2d 640 (2d Cir. 1970).